## Allegheny & Perrysville Plank Road Company, Plff. in Err., *v.* Clarissa McCloy.

In an action against a plank road company for injuries caused by water from a culvert flowing on plaintiff's land, where evidence was offered that the injury was caused by an obstruction made by the plaintiff herself,— *held,* it was not error to submit the evidence to the jury and to refuse binding instructions in favor of the defendant.

(Argued October 24, 1887.   Decided November 7, 1887.)

October Term, 1887, No. 13, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas No. 2 of Allegheny County to review a judgment in favor of the plaintiff in an action of trespass on the case. Affirmed.

The facts are stated in the charge of the court below, WHITE, J., which was as follows:

It is very important that we should have a clear perception of the issue in this case.   The plaintiff presented certain points for instructions to the jury.   I have refused all of them, because I thought they were based on a misrepresentation of what was the real issue in this case.   They were based on the supposition or theory that this road and culvert were constructed while Mrs. McCloy owned the property.   The evidence is uncontradicted that this road was constructed nineteen years before Mrs. McCloy bought the property, and that a culvert had been constructed at this very point; hence, those points which relate to the rights of a road company on private property at the time of the construction of the road or culvert do not apply.

NOTE.—For the submission of the question of negligence to the jury, see notes to Schneider v. Pennsylvania Co. 1 Sad. Rep. 290, and Reinhart v. South Easton, 2 Sad. Rep. 90.

For a complete discussion of the authorities as to what may be done with surface waters, see Farnham on Waters, pp. 2571–2646.

It is in evidence and undisputed that George Ledlie owned this property at the time the road was constructed in 1850; that he was also a director of the road and one of the active promoters of the enterprise, and that he was in favor of the new location around the hill to his property, instead of going straight over as before.    It is also in evidence that for several years after the road was constructed, and the culvert was constructed at this point, he was a director of the road.    There is no evidence of any direct grant by him of the right to have a culvert there and pour the water onto his lot.    On the other hand, there is no evidence of any objection on his part; and it is fair to presume from the fact that he owned the lot, was a director of the road for several years before and for several years after the construction of this culvert, that he consented to it.

I need hardly dwell upon the rights of a company in the original construction of a road and original construction of culverts.    Supervisors of the highways and those constructing turnpikes have undoubtedly the right to construct culverts across a road so far as to carry off the water.    It would be disastrous to property at the foot of a long hill if all the water from the top of the hill should be carried down to the bottom of it.    The water flowing down a hill flows naturally, and the rainfall from above the hill flowed down upon this very property before the road was constructed.    The lower property is always burdened with the water that comes down from the hill above.    By the construction of a road like this the water that comes down from the hill above is arrested—does not flow down naturally across the surface as it did before; for that purpose drains or gutters are constructed generally on the upper side of the road, that is next to the hill, that collect the water.    In place of flowing down naturally, as it did, it is collected in the gutter or drain and is carried down the road.    Necessarily there must be some culverts on a long hill to carry the water across to prevent the vast accumulations that would come to the foot of the hill.    Of course supervisors and the managers or constructors of a turnpike must exercise some discretion in making drains and culverts and not unnecessarily do damage or injury to property; perhaps on some properties they would be bound to take some care of the water after it passes through the culvert.    Generally in the country it flows into woods or into a field and is spread after it goes through the culvert and does little or no injury.    If large

quantities of water collected and went through a culvert I do not think the supervisors would have a right to let it flow directly where it would do a serious injury to a farm in the way of plowing up a field or destroying improvements.    Still, ordinarily, the amount of water conveyed through a culvert may be spread over the surface of the ground and do little or no harm, and for a culvert constructed in that way the law does not give any compensation to the owner; it is a servitude that he must bear and generally it is not much worse than the natural flow of the water from the hill before the road was constructed.

But, as I say, those principles have not much application in this case, because the road was constructed nineteen years before Mrs. McCloy purchased the property.    You will remember, according to the evidence, that this was a stone quarry at the time Mrs. McCloy purchased it; that it was a stone quarry when Ledlie owned it, and according to the evidence of several witnesses, the water from the culvert poured down into it, and then flowed southward onto the old quarry road, now called O'Hern street.    That was the natural course of the water at the time this culvert was constructed.    At that time it would do no injury to George Ledlie, being simply a stone quarry, and hence we may very reasonably infer that he had no objections to the water being turned onto his quarry by this culvert, and that, on the contrary, he consented to it.    At the time Mrs. McCloy purchased there was a culvert, and she could see that the water poured down from it onto this lot; hence, she bought the property subject to whatever rights the road had at that time and subject to the easement or servitude it was then burdened with, because when persons buy property they buy it with their eyes open, and if they see that it is burdened with an easement they take it subject to it.    It is generally supposed that the price is in view of the burdens upon the property and of the condition at the time; when she bought, if she saw there was a culvert there and the water poured down on this lot and ran out along the quarry towards the old quarry road, and there emptied itself, she bought it with that knowledge and took it subject to that easement; she could not afterwards change the course of water or stop up the course that it was flowing and ask the road company to pay her damages.    I say the presumption is that she paid a price for the property in view of its condition at that time and of any servitude upon it.

Now the question is this: Has there been any material change in that culvert to her injury since she purchased? If there has not been then she cannot recover.

It is alleged by the plaintiff that about eight years ago the culvert was changed or enlarged, and that a much greater quantity of water flows through it now than formerly. The company denies that and says that the culvert was constructed there when the road was built in 1850; that it has never been changed, nor has it been enlarged, but it has been cleaned out; that occasionally it would be stopped up by the dirt accumulating in it, which would prevent a good deal of water going through, and that all that has been done has been to clean it out. The defendant says that the area drained by it is precisely the same now as at first. The next culvert above the hill from that is about 640 feet distant — what is called the Reynolds culvert — and the testimony is that that culvert is there to-day; that it was there when the road was constructed in 1850, and that no more water flows down the gutter now than flowed there from the first; and defendant contends that no more water goes through this culvert in dispute than did from the first.

Mrs. McCloy and her son testified that the culvert was enlarged eight years ago. They saw some workmen working there, and from that they believe that the culvert was enlarged, but mainly because they say that after that there was a great increase of water. You have the testimony of quite a number of the officers of the road who have known it more than sixteen years; some of them have known it from the start; some were connected with it at first. Several workmen who worked on it testify that the culvert was there from the start, and some of them say no more water flows through it now than did at first, except when it was occasionally stopped up.

Now there is the issue in this case under my instructions to you. If that culvert is the same as originally constructed the plaintiff has no cause of action. If no more water flows through it than originally flowed through it—no greater area drained— she has no cause of action, because she bought the property subject to the easement then upon it. The main argument is that during the first eight years of her residence there they were not troubled with water, but for about eight years past they have been seriously troubled and injured by the water. It is alleged upon the part of defendant's counsel, and the evidence tends to

sustain it, that her injury results from changing the outlet of the water.    If you believe from the evidence (and it is really not contradicted) that it flowed down the quarry southward to what is now O'Hern street and emptied itself out there, and that the change in the course of the water upon her lot is in consequence of the filling in at O'Hern street and also in consequence of the filling in on the private road that leads from her house out to O'Hern street (10 to 15 feet in some places) causing it to flow back and to spread over her lot,—she would be the cause of the injury herself, stopping up what was the natural outlet of the water when she bought the property.    She could not call upon the turnpike company to build her a gutter to carry off the water which was thrown back on her lot in consequence of stopping up this overflow.

The testimony of one of the tenants living in the house was that when there was any considerable rain it came down from the culvert and spread over the lot.    He spoke about a little drain that was constructed there not being sufficient to carry off the water.    That was a drain constructed by Mrs. McCloy after the private road was built, and if the injury resulted from that drain not being sufficient she was to blame herself for not making a larger one.    But if, as contended by the plaintiff eight years ago the culvert was greatly enlarged and a greater quantity of water flowed through it than did before, and in consequence of that increased flow of water she was damaged, then I say to you she would be entitled to recover the damages for that in-creased flow of water.    The turnpike company would have no right to change the culvert after she bought so as to increase the flow of water upon her ground without her consent.

[The question of fact then is, Is there an increase in that culvert or change in the drainage above by which a larger quantity of water is thrown onto her lot than formerly?]    [2]    And it is for that reason that the points presented by the plaintiff's counsel have been refused by the court.

You will remember that the new planks were placed on the plank road about eight years ago, according to the testimony of Mrs. McCloy and her son, and that prior to that there had been no plank on the road.    From the testimony of others that seems to be a mistake; they say that the road was really planked at first, in 1850, and was a plank road from that time down.    That has a good deal of bearing on the question whether there was

any change in this culvert eight years ago further than simply cleaning it out and taking out the wall that Mrs. McCloy had put in there to stop the water. Of course she had no right to stop up the culvert. As I have said, she bought the property with that culvert there and subject to that easement. It may seem a little hard on Mrs. McCloy, because it may now be an injury to her improvements, her yard, her shrubbery, her walks, when it was no injury originally. The water flowed down there when it was a stone quarry and would do no harm to Mr. Ledlie, but since she has built and planted shrubbery and trees the water may be an injury to her. That may look like a hardship upon her, and yet when she bought the property she bought it subject to the right of the company to pour the water down there, where it was and had been pouring from the time the road was built; and if she by her improvements changed the course of it or stopped up the natural outlet of the water she has no person to blame but herself.

If you find that the turnpike company greatly enlarged the culvert eight years ago, and in consequence of that a much greater flow of water went through there than during the previous period of its history to plaintiff's prejudice and injury, she would be entitled to compensation for that and that alone. If you find such to be the fact then you will pass to the question as to what damages she sustained in consequence thereof. Bear in mind, however, that when she bought, the water flowed out in a way to do no harm, and if the injury results from her building up the private road and thus stopping the outlet of the water, it would be the result of her own conduct. She ought to have made a culvert under to carry off the water, if that was the course it flowed at the time she bought the property. If you find there was no material change in the culvert except cleaning it out, then your verdict ought to be for the defendant.

Verdict and judgment for plaintiff.

The assignments of error specified: (1) The action of the court in not giving binding instructions to the jury that the plaintiff below obstructed the natural flow of the water, and caused the very injury upon which suit was brought; and (2) the portion of the charge in brackets.

*Marshals & Imbrie,* for plaintiff in error.—The court should

have given binding instructions in favor of the defendant on the uncontradicted evidence that the plaintiff caused the injury herself of which she complained.

At the time of the location and building of this road the entire inhabitants of the southern slope of Observatory Hill would not exceed twenty. This is a territory of over 100 acres of land. Now the population would likely approach, if not exceed, 1,000. Streets and avenues have been opened. The city enlarged her border, and made all this territory a portion of the second ward of the city. The exact measure of the flow of water to this culvert from the opening of streets, etc., no man can ascertain. Nor could any twelve jurors find out. Yet the court says: "The question of fact then is: Is there an increase in that culvert, or change in the drainage above, by which a larger quantity of water is thrown on her lot than formerly?"

We submit that the Plank Road Company is not responsible for the "drainage above," caused by the opening of streets and avenues. That company neither changed the drainage nor had the power or right to interfere with the improvements which follow the growth of a great city. We think that the door of conjecture was left open for the jury to assess damages without legal right.

*J. Charles Dicken,* for defendant in error.—Plaintiff in error is a corporation, collecting toll and paying dividends, without extraordinary powers, a simple easement, and should have exercised a sound discretion in placing culverts along its roadway, so as to do no unnecessary damage to private property. No natural depression existed there, such as is usually found at points of drainage along highways. This culvert was a matter of convenience to it; its enlargement must have seemed to it a necessity. The results were disastrous to the property of Mrs. McCloy, for an entire lot of ground was rendered valueless, her buildings permanently injured and her whole property defaced.

PER CURIAM:

The court below would not have been justified under the evidence in giving the binding instructions referred to in the first assignment. Nor are we prepared to say there was any substantial error in the lines of the charge contained in the second assignment.

The charge on the whole was fair and adequate

Judgment affirmed.